Points decided.

[No. 2,986.]

# APPEAL OF S. O. HOUGHTON.

RULES FOR CONSTRUING STATUTES AS TO APPEALS.—If a statute is capable of being so construed as to maintain the right of appeal without violating the well established rules for construing statutes, it will be so construed.

RULE AS TO MEANING OF WORDS.—In construing statutes, words are to be taken in their usual and popular sense, unless they have a well understood technical meaning; and, if practicable, effect shall be given to all the words and provisions of the statute.

CONSTRUCTION OF ACTS OF 1868 AND 1870 RELATIVE TO STREETS IN SAN FRANCISCO.—The Acts of 1868 and 1870, to modify the grades of streets in San Francisco, in declaring that the judgment of the County Court on the second report of the Commissioners shall be "final and conclusive," means that there shall be no appeal from the judgment, and that it shall not be reviewed by the County Court, except by motion for a new trial.

SAME — CONSTITUTION CONSTRUED—NATURE OF PROCEEDING.—The proceeding under the Acts of 1868 and 1870, modifying grades of streets in San Francisco, is a special one, and not a case at law involving the legality of an assessment, in the sense of Article VI, section four, of the Constitution. If it were a case at law, it would not be competent for the Legislature to confer jurisdiction of it upon the County Court, because the Constitution, in express terms, confers upon the District Court original jurisdiction in that class of cases; and such jurisdiction is exclusive, unless there be something in the instrument evincing a contrary intent.

REMEDY FOR DAMAGES.—The only remedy for property owners who have suffered damage under the Acts of 1868 and 1870, relative to modifying grades of streets in San Francisco, is by application to the Legislature for relief.

By WALLACE, J.:

APPEAL, THE CREATURE OF STATUTORY ENACTMENT.—Independently of rules adopted by the Supreme Court, an appeal as a mere procedure is defined by statute. It is essentially the creature of the statute, and may be accorded or withheld, restrained, enlarged, or wholly abrogated, by legislative enactment.

BENEFIT OF APPEAL NOT SECURED BY THE CONSTITUTION—SUPREME COURT RULES.—The Constitution has not undertaken to define ·or secure the benefit of an appeal to any person against the legislative control. It has left that subject wholly to the Legislature, or, in default of legislative enactment, to the Supreme Court, through rules adopted for that purpose.

JURISDICTION OF SUPREME COURT OVER APPEALS.—The appellate jurisdiction of the Supreme Court exists, and is capable of effective assertion,

independently of legislative aid, as to the procedure through which an appeal is to be exerted.

APPEAL MUST BE AUTHORIZED BY STATUTE OR RULE.—No appeal of a particular class or character can be entertained by the Supreme Court, unless authorized by a statute, or a rule of Court, even though such cases be in themselves within the appellate jurisdiction of the Court, as defined by the Constitution.

GENERAL JURISDICTION OF SUPREME COURT.—Except cases arising in the Probate Court, and criminal cases amounting to felony, no case is, by the terms of the Constitution, subject to review by the Supreme Court, in the exercise of its appellate power, unless it be a case in equity, or a case at law of a definite character.

SPECIAL CASES NOT CASES AT LAW.—Special cases are special proceedings characteristically differing from ordinary suits at the common law. They do not proceed according to the course of the common law, but give new rights and afford new remedies. Such cases are not cases at law within the appellate jurisdiction of the Supreme Court, as defined by the Constitution, even though they involve questions of value.

QUERY AS TO LEGISLATIVE POWER IN REFERENCE TO THE JURISDICTION OF SUPREME COURT.—Whether it would be competent for the Legislature to add to the class of cases over which the Constitution has declared that the appellate power of the Supreme Court is to be exercised, another and distinct class, not enumerated as such in the Constitution?

By TEMPLE, J.:

JUDGMENT CONCLUSIVE AS TO ASSESSMENT.—The proceeding under the Acts of 1868 and 1870 was a proceeding in the exercise of the sovereign power of taxation, and the action of the Court was final and conclusive as an assessment.

NOT A CASE AT LAW.—Such proceeding is not a case at law of which the Constitution has vested the Supreme Court with appellate jurisdiction, in terms.

CASES DISAPPROVED.—Knowles v. Yeates, 31 Cal. 82; Conant v. Conant, 5 Cal. 252.

By RHODES, C. J.:

SPECIAL CASES NOT INCLUDED IN CASES AS USED IN CONSTITUTION.— Special cases are not included within the meaning of the word "cases," as it is used in that portion of the Constitution which defines the jurisdiction of the Supreme Court.

JURISDICTION OF SUPREME COURT DERIVED FROM CONSTITUTION.—The jurisdiction of the Supreme Court is derived from the Constitution alone, and the Legislature can neither enlarge nor restrict it. When a special case is devised, the question whether the Supreme Court has jurisdiction in the matter must be determined by an interpretation of the provisions of the Constitution, and not by reference to the statute.

APPELLATE JURISDICTION OF SPECIAL CASES.—The Supreme Court has appellate jurisdiction of special cases, such as that under the Acts of 1868 and 1870, relative to modifying grades of streets in San Francisco, notwithstanding the Legislature may have intended to cut off such appeal.

CASES APPROVED.—Knowles v. Yeates and Conant v. Conant, *supra*.

By SPRAGUE, J.:

CASE INVOLVING THE LEGALITY OF ASSESSMENT.—The proceeding under the Acts of 1868 and 1870 presents a case involving the legality of an assessment, and under the Constitution, and section three hundred and fifty-nine of the Practice Act, an appeal lies from the judgment of the County Court.

CONSTRUCTION OF WORDS "FINAL AND CONCLUSIVE," IN STATUTE.—The words "final and conclusive," in the Act of 1870, apply to the County Court only, and do not prohibit an appeal to the Supreme Court.

APPEAL from the County Court of the City and County of San Francisco.

This was a proceeding under the provisions of an Act of the Legislature, entitled "An Act to authorize the Board of Supervisors of the City and County of San Francisco to modify the grades of certain streets," approved March 30th, 1868 (Stats. 1867–8, p. 594), and an Act amendatory thereof, approved February 1st, 1870 (Stats. 1869–70, p. 41). After the grading had been done, the Commissioners appointed by the Board of Supervisors heard the evidence of the parties interested, and submitted their report to the County Court, fixing the amount of benefits and damages resulting to property by reason of the change of grade. Under the Acts mentioned, the expenses of the work and all damages in consequence of it were to be paid out of the fund created by the assessed benefits. Upon application of parties complaining of the report, it was set aside, and the whole matter was by the County Court recommitted to the Commissioners, with certain instructions. They proceeded to make another investigation, and presented a second report. Objections to this report were filed by a large number of persons, including the appellant, Houghton, whose property had been reported benefited in the sum of nine thousand

six hundred dollars, and no damages allowed him. The Court overruled the objections and confirmed the report. This appeal is taken from the order refusing to set aside the second report, and from the judgment confirming it.

The other facts are stated in the several opinions of the Justices.

The respondent moved to dismiss the appeal.

*McAllister & Bergin*, for Appellant.

It is a cardinal rule in the construction of statutes, that every intendment is to be made against the taking away of the right of appeal or review. (*Lawton* v. *Commissioners*, 2 Cain's Rep. 179; *Rex* v. *Commissioners*, 2 Keble, 43; *Rex* v. *Morley*, 2 Burr, 1042.) In the case last cited the language of the Act of Parliament in question was:

"That no other Court whatsoever shall intermeddle with any cause or causes of appeal; but they shall be finally determined in the Quarter Sessions only." Yet the Court of King's Bench ruled that "the jurisdiction of this Court is not taken away unless there be express words to take it away—this is a point settled."

In *Richards* v. *Hodges*, 1 Mod. 45, Chief Justice KELLYNGE ruled that "you cannot oust the jurisdiction of this Court without particular words in Acts of Parliament."

In view of this settled rule we might stop here; for it cannot be pretended that the statute in terms takes away the right of appeal. If we correctly understand the position advanced in support of the motion, it is this: that the words, "such judgment of said County Court as to the premises shall be final and conclusive," do away with the right of appeal. But the answer is, that this language refers altogether to the County Court, and not to this Court. The Legislature had provided, in the preceding part of the statute, that upon filing of the report of the Commissioners notice should be given, and all parties interested allowed

twenty days within which to object to confirmation of the report, and the County Court was empowered to hear and determine the objections, with power to recommit the matter to the Commissioners. The right of objection was reserved as to the second or amended report that the Commissioners might make; but here the Legislature determined that the right of reëxamination should end in the County Court, and accordingly the language of the statute is, not that there shall not be any right of appeal from the action of the County Court, but that "such judgment of said County Court as to the premises shall be final and conclusive." The right of appeal or review in this Court is not once alluded to in the entire Act. Had there been any reference to this Court, or to the right of review in a superior Court, contained in the Act, there might be some force in the argument; but, in absence of all such allusion or reference, a construction that would under such language take away the right of appeal is alike strained and unnatural. The judgment in the County Court, rendered upon the second or amended report, is made final and conclusive in that Court; the County Court cannot change or alter it; but there is not a word in the statute, that in terms or by fair implication, does away with the right of review in this Court. Indeed, the next succeeding sentence of this very section unmistakably shows that such was not the intention of the Legislature. The language is:

"And upon the final judgment of said County Court as to the premises, all assessments made and set forth in said report shall, from and after such final judgment, be a lien upon the respective parcels of land.  *  *  *" The Court will observe the entire absence from this most important sentence of all words of reference to show that the final judgment of the County Court mentioned in the preceding sentence was the one that was to become a lien upon the lands. The language of the Legislature is not "and upon

such final judgment," or " and upon said final judgment of said County Court as to the premises, all assessments made and set forth in said report shall, from and after such final judgment, be a lien upon the respective parcels of land." The absence of any such connecting word or phrase is the more significant when we see that immediately succeeding in the same sentence, where it is intended to make the same identical judgment a lien on the lands in the district, such connecting word is carefully inserted, "from and after such final judgment," the amount of the assessments shall be a lien upon the land charged therewith in the district. Had it been the intention to make the judgment of the County Court, mentioned in the preceding sentence of the section, the one that was to operate as a lien on the lands within the district, the inference is irresistible that the apt expression for that purpose would have been used.

It is scarcely necessary to cite authorities in support of the proposition that the intention of the Legislature must be gathered from the language employed in the statute, and that in endeavoring to ascertain the intention of the law makers effect must be accorded to every word used in the statute. (*Bourland* v. *Hildreth*, 26 Cal. 230.)

We submit, then, that there is nothing in the statute doing away with the right of appeal.

Section three hundred and fifty-nine of the Practice Act provides that an appeal may be taken from the County Court to this Court, "in an action wherein the legality of any tax, imposts, assessment, toll, or municipal fine is in question; and in any special case within the appellate jurisdiction of the Supreme Court, over which the Legislature may require the County Court to exercise jurisdiction."

It would seem scarcely necessary to make an argument in support of the right of appeal in the presence of such language as this. Is it in regard to the amount involved? Judgment for nine thousand six hundred dollars has been

rendered against Houghton, and in this regard there can be no doubt of the right of appeal.

Is it in respect to the legality of a tax or assessment? The statutes under which the whole proceedings were had conclusively show that they were taken under one or the other. It is unquestionably in exercise of the power to assess that the judgments were entered against the lands of the respective parties. Argument cannot make this clearer. Is not the legality of these assessments here directly involved? Is not their legality affirmed on the one hand and denied on the other? Most unquestionably. Could their legality be any more directly involved? Were an action instituted for the direct purpose of impeaching their legality, would the question be any more directly involved? Assuredly not. The very substratum of our appeal, the entire gravamen of our complaint, is, that these assessments are illegal. We challenge now, as we have done always, the legality of these assessments. Clearly the case comes directly within the language of the statute. (As to what is an assessment, see *Taylor* v. *Palmer*, 31 Cal. 253; *Baudry* v. *Valdez*, 32 Cal. 279; *Hendricks* v. *Crowley*, 31 Cal. 471.)

In any action that may hereafter be brought upon the judgment rendered upon this assessment, the only defense that can possibly be made will be, not the legality of the assessment itself, but the jurisdiction of the Court that rendered the judgment, or that of payment. It follows, therefore, that the legality of the assessment is necessarily and directly involved in the present proceedings. (*Mecham* v. *McKay*, 37 Cal. 164; *Collins* v. *Butler*, 14 Cal. 228; *Barnum* v. *Reynolds*, 38 Cal. 646; *Sullivan* v. *Triumfo M. Co.*, 39 Cal. 465; *Bernal* v. *Lynch*, 36 Cal. 143; *People* v. *Doe G.*, 36 Cal. 222.) But take a more comprehensive view of the nature of these proceedings, and the provisions of the

Constitution upon the subject. These proceedings, in effect, amount to an order upon all the property owners within the designated section of the city to show cause, if any they can, in the County Court, why an assessment of thousands of dollars should not be imposed upon them. They appear. They challenge the legality of the action of the Court, and the validity of the attempted assessment. They are over-ruled, and appeal to this Court. Is not this precisely the thing, the right to review the legality of which in this Court it was the manifest intention of the Constitution to insure to them? What is the meaning of the phrase "in all cases," as it occurs in section four of Article VI of the State Con-stitution? The Constitution of the United States contains, substantially, the same expression: "The judicial power shall extend to all cases in law and equity." (Const. Art. III, Sec. 2.) In *Osborn* v. *U. S. Bank*, 9 Wheat. 819, the Court, in speaking upon this point, says: "This clause ena-bles the judicial department to receive jurisdiction to the full extent of the Constitution, laws, and treaties of the United States, when any question respecting them shall as-sume such a form that the judicial power is capable of acting on it. That power is capable of acting only when the sub-ject is submitted to it by a party who asserts his rights in the form prescribed by law. It then becomes a case; and the Constitution declares that the judicial power shall extend to all cases arising under the Constitution, laws, and treaties of the United States." (2 Story Const. Secs. 1646–1858.) In *Weston* v. *City Council of Charleston*, 2 Pat. 449, the Court held an application for a writ of prohibition to be a case; and in *Ex Parte Mulligan*, 4 Wall. 113, the Court held an appli-cation for a writ of habeas corpus to be a case. A case is a legal controversy prosecuted according to the forms of law. Thus insolvency proceedings are deemed cases. (*People* v. *Shephard*, 28 Cal. 117.) So with contested elections. (*Knowles* v. *Yeates*, 31 Cal. 82; see, also, *Lake Merced Water*

*Co.* v. *Cowles*, 31 Cal. 215; *Day* v. *Jones*, 31 Cal. 263; *Winter* v. *Fitzpatrick*, 35 Cal. 273; *Morley* v. *Elkins*, 37 Cal. 456; *Will* v. *Sinkwitz*, 39 Cal. 573; *Briggs* v. *McCullough*, 36 Cal. 549; *The Beale Street Case*, 39 Cal. 498.) So, likewise, in cases of condemnation. (*Sacramento, Placer, and Nevada R. R.* v. *Harlan*, 24 Cal. 239; *San Francisco and San Jose R. R.* v. *Mahoney*, 29 Cal. 115; *Gilmer* v. *Lime Point*, 18 Cal. 229; *s. c.* 19 ib. 47; *Contra Costa R. R. Co.* v. *Moss*, 23 Cal. 325.)

We here beg to call the attention of the Court to the fact that neither the general railroad law, nor the Act authorizing condemnation of Lime Point, gave any express right of appeal, nor was such right expressly conferred in the Act authorizing water companies to condemn private land, yet in all of those cases this Court has affirmed the right of appeal. (Stats. 1859, p. 26; Stats. 1861, pp. 619–622; Stats. 1858, p. 219; Stats. 1853, p. 172; *Heyneman* v. *Blake*, 19 Cal. 580; *Spring Valley Water Works* v. *San Francisco*, 23 Cal. 434.)

But to proceed with the argument. The case at bar is, therefore, a case—it is a legal controversy, prosecuted according to the forms of law. Is it a case at law? Most unquestionably; all cases are such that do not fall within the domain of equity or admiralty. Does it not involve the requisite amount to come within the jurisdiction of this Court in that particular? Judgment for nine thousand six hundred dollars has been rendered against the lands of Houghton. But were it otherwise, this is a case in which the jurisdiction of this Court does not depend upon the question of amount—it is a case involving the legality of a tax, an assessment. (*People* v. *Mier*, 24 Cal. 61, 66, 71, 72; *Bell* v. *Crippen*, 28 Cal. 328; *Mahlsted* v. *Blanc*, 34 Cal. 579.)

This case, therefore, comes within the letter of the Constitution, and that instrument emphatically declares that

this Court shall have appellate jurisdiction. This jurisdiction it is not in the power of the Legislature to take away—legislation may prescribe the mode of its exercise, but cannot take it away. (*Haight* v. *Gay*, 8 Cal. 300.) Nor does the fact that the proceedings are somewhat special in their character affect the jurisdiction of the Court. If the constitutional elements essential to the appellate jurisdiction of this Court exist, it is not material whether the proceedings be special or otherwise. If the sum involved be of the requisite amount, if the proceeding partake of the character of a suit in equity, or if it involve the legality of a tax, impost, assessment, toll, or municipal fine, it matters not what the nature or character of the proceedings in other respects may be, this Court, in the language of the Constitution, "shall have appellate jurisdiction." The purpose of that instrument was, in all cases in which questions of the grave and important character usually arising where the amount is large, the suit is of an equitable nature, or the legality of any tax, impost, assessment, toll, or municipal fine is involved, to reserve to the parties the right of appeal to this Court, regardless of the mere form in which the case might be presented. (*Knowles* v. *Yeates*, 31 Cal. 82.)

"The primary meaning of the word 'case,' according to lexicographers, is, 'cause.' When applied to legal proceedings it imports a state of facts which furnishes occasion for the exercise of the jurisdiction of a Court of justice. In this, its generic sense, the word includes all cases, special or otherwise." (*Kundolff* v. *Thalheimer*, 2 Kern. 596; *Benson* v. *Cromwell*, 26 Barb. 221; *Ricks* v. *Reed*, 19 Cal. 572–574; *McNeil* v. *Borland*, 23 Cal. 148; *Arnold* v. *Rees*, 18 N. Y. 58.) The qualifying expression, "at law," is used in contradistinction to equity, and should not be so construed as to limit the jurisdiction of this Court to actions purely *inter partes*. Such a construction would be inadmissible, because, opposed to the received practical construction, would do

violence to the letter and spirit of the text of the Constitution, and strip this Court of all its usefulness. (*People* v. *Mier*, 24 Cal. 66.)

In regard to the material cases cited in support of the motion, we beg to make but a few remarks. As to the New York cases: The Constitution, of 1846, of New York is entirely unlike ours in its distribution of judicial power. The first section of the sixth article of that Constitution creates a Court for the trial of impeachments; the second provides for the creation of the Court of Appeals, but does not define its jurisdiction; the third, that there shall be a Supreme Court, having general jurisdiction in law and equity; the fourth, for the creation of Supreme Court districts; the fifth, that the Legislature shall have the same power to alter and regulate jurisdiction and proceedings in law and equity, as they have heretofore possessed; the fourteenth, among other things, that the Legislature may confer equity jurisdiction upon the County Judge; and the twenty-first section declares that the Legislature may authorize the judgments, decrees, and decisions of any local inferior Court of record of original jurisdiction, established in a city, to be removed for review directly into the Court of Appeals. (American Constitutions, 144, 145—Constitution of New York.) These are its material provisions upon the subject of the jurisdiction of the judiciary, and the Court will at once see that the entire matter is left in the power of the Legislature to define and regulate. Unlike our Constitution, that of New York made no specific enumeration of the jurisdiction of its Courts, and, of course, the right of appeal there depended not upon the Constitution, but upon the statute expressly conferring it. Such was the Constitution of New York in force at the time the cases cited were decided.

Bearing this in mind, let us consider those cases.

In *McAllister* v. *The Albion Plank Road Company*, 6 Seld. 354, the statute authorized the original application to be

made to the County Court, and allowed an appeal from its judgment to the Supreme Court, and declared that the judgment of the Court upon the appeal "shall be final and conclusive in the matter." Upon this case we remark that there was no constitutional right of appeal, and the statute expressly providing for our appeal, and declaring the judgment rendered upon that appeal "final and conclusive of the matter," clearly showed the intention of the Legislature not to allow of any further appeal. In our Act of the Legislature the word appeal does not once occur, and there is nothing from which to infer an intention on the part of the Legislature to take it away if it existed.

In the *New York Central R. R. Co.* v. *Marvin*, 1 Kern. 278, the statute authorized an appeal from the appraisal of the Commissioners to the special or general term of the Supreme Court, and empowered the Court, in its discretion, to recommit the matter to the Commissioners; but the second report of the Commissioners was declared "final and conclusive." The Court was not allowed to alter or interfere with the second report—the statute made it final and conclusive. Under the laws of New York an appeal would lie from the judgment of the general term, but not from the special term of the Supreme Court, to the Court of Appeals; and as the party might, at his election, appeal from the first appraisal to the special or general term of the Supreme Court, the Court of Appeals held that it was evidence of the intention not to allow an appeal to that Court at all, inasmuch as none was expressly provided for—that should it uphold the right of appeal from the general term, it would still be in the power of the party by appealing to the special term, from which no further appeal would lie in any case to cut off the right of appeal to the Court of Appeals, and therefore the right of such appeal at all was inadmissible. How widely different from the statute in the case at bar, where no provision is

in terms made for an appeal, and where there is nothing from which to show any intent to take the right away.

The Court of Appeals further dwell upon the fact that the statute indicated an entire system for ascertaining the value of the lands taken. In the statute here in question there is no such system. In *Mahoney* v. *The San Francisco and San Jose R. R. Co.*, 29 Cal. 115, this last argument was urged upon the Court against the right of review, and this very case, and others cited in support of it, but the Court overruled it, and maintained the right of review. The same observations apply to the other New York cases cited. The same remarks apply to the Constitution of the United States that have been made in regard to that of New York. Appellate jurisdiction is conferred upon the Supreme Court of the United States, " both as to law and fact, with such exceptions and under such regulations as the Congress shall make." (Const. U. S., Art. III, Sec. 2, Subd. 2.)

The Act of Congress involved in the *U. S.* v. *Nourse*, 6 Pet. 493, allowed no appeal, nor had the Supreme Court any appellate jurisdiction in absence of such express allowance. Hence the case is not in point. (*U. S.* v. *Circuit Judges*, 3 Wall. 676, 677, 678.)

In conclusion, we insist that the law does not favor repeal by implication. By implication alone are we sought to be deprived of the right of appeal. By implication alone is the jurisdiction of this Court sought to be abridged. This is inadmissible; yet were the implication as strong as the rule requires, we submit that under the Constitution we cannot be divested of our right of appeal, nor can the appellate jurisdiction of this Court be abridged. (*Crosley* v. *Patch*, 18 Cal. 442.)

*James H. Hardy, Jos. M. Nougues,* and *E. D. Sawyer,* for Respondent.

The judgment of the County Court in the premises is final and conclusive, and no appeal is allowed therefrom by law. It is not questioned that this is a special case, or special proceeding; or that the County Court had jurisdiction of the entire matters contained in the Acts of the Legislature. The appeal is from the orders and the judgment of the Court, "made and entered in the said proceedings." Being a special case or proceeding (Stats. 1869–70, p. 42; *Saunders* v. *Haynes,* 13 Cal. 152; *Hicks* v. *Reed,* 19 Cal. 574, and cases there cited), it is a "special creation of the statute," and within the legitimate scope and power of the Legislature to vest the County Court with jurisdiction, absolute and final, and independent of review by the Supreme Court.

The language of the statute is, "such judgment of said County Court as to the premises shall be final and conclusive." The proper interpretation to be given to the words "final judgment" is, that it is such a judgment as at once puts an end to the proceeding.

In the case of *McAllister et al., Commissioners,* v. *The Albion Plank Road Company,* 10 N. Y. (6 Seld. 353), the language used in the statute under which the proceedings originated and culminated was, "and such judgment shall be final and conclusive." The Court of Appeals, on motion to dismiss the appeal on the ground that the order of the Supreme Court was not appealable, say:

"We are of the opinion that it was the intention of the Legislature that the decision of the Supreme Court upon appeal from the County Court, under the plank road Acts, should be an end of the controversy, and that no appeal will lie to this Court therefrom. The Act of 1847 declares that such decision shall be final in the matter, and the Act of

1851 that it shall be final and conclusive. It is not perceived how any effect can be given to these expressions unless it be to take away and prevent any further appeal or review. They certainly add nothing to the force or validity of the decision, which would be just as binding and operative, in all respects, without as with them, and it will hardly do, after they have been inserted in the original Act and repeated in the amendment, to treat them as redundant and meaning nothing."   •

In the case of *New York Central Railroad Company* v. *Marvin*, 11 N. Y. (1 Kern. 277), an appeal was taken from a judgment of the Supreme Court affirming the report of Commissioners. The Act of the Legislature in reference to the subject matter of the proceeding provided that the judgment of the Supreme Court should be "final and conclusive." The Court of Appeals granted the motion to dismiss, and stated that "the whole proceeding is a special creation of the statute, and seems designed to form a complete system of itself, entirely independent of the general provision of the statute authorizing appeals to this Court."

In the case at bar, "the proceeding is a special creation of statute;" there is no general law authorizing the proceeding, and it undoubtedly was "designed to form a complete system of itself;" and, there being no appeal provided for, no machinery by which it can be brought to the Supreme Court, "it is entirely independent of the general provision of the statute authorizing appeals." (*In the Matter of Extending Canal and Widening Walker Streets*, 12 N. Y., 2 Kern. 406; *King et al.* v. *Mayor of New York*, 36 N. Y., 9 Tif. 182; *New York Central Railroad Company* v. *Marvin*, 1 Kern. 276.)

If the general provisions of the Practice Act apply, why have not the parties appellant the right to move for a new

trial in the County Court? Under what view of the law are they debarred from this right? And if they have failed to exercise it, how can they hope for remedy by appeal?

We submit that the proceeding in question is not governed by any of the requirements or provisions of the Practice Act, but that it is a special statutory proceeding; and, in the absence of express legislative enactment, the statute regulating appeals has no application. (*The Bowery Extension Case*, 2 Abb. Pr. 368, 370; opinion of PEABODY, J.) In the matter of contempts, the action of the Court cannot be reviewed. (*Cohen* v. *Jones*, 5 Cal. 494.) And if, in contested election cases, the statute did not specially authorize appeals, it would be questionable if this Court would consider them.

This is not a case at law involving the legality of a tax or assessment.

The Practice Act, section one, provides: "That there shall be in this State but one form of civil actions for the enforcement or protection of private rights and the redress or prevention of private wrongs." "Sec. 2. In such action the party complaining shall be known as the plaintiff, and the adverse party as the defendant." The word "case" means an action, or suit at law, or in equity. (Burrill's Law Dictionary, 185; Bouvier's Law Dictionary, 243; 1 Wheat. 352; 3 Story on Const. 507; 9 Wheat. 819; 9 Peters, 223.) Does it need argument or illustration to prove that this special proceeding is not an action, or suit at law, or in equity? We imagine not. Is it in the form recognized in the prosecution of suits at law or in equity? Who has filed the complaint? No one; because there has been no complaint filed. No summons or process was issued under the seal of the Court, or hand of the Clerk of the county. Who, may we be permitted to inquire, was the party plaintiff, or known as the party plaintiff? and what persons stood in the relation of parties defendant? There is not in the

whole proceeding any of the essential prerequisites of an action at law or in equity. It is special proceeding. (*Parsons* v. *Tuolumne Water Co.*, 5 Cal. 43; *Hicks* v. *Reed*, 19 Cal. 574; *McNiel* v. *Borland*, 23 Cal. 147.) Before the legality of a tax or assessment can be involved, there must be a case at law; or when equitable relief is asked, a case in equity. (*Bell* v. *Crippen*, 28 Cal. 327.) In what manner can it be said the legality of a tax, etc., is involved in this proceeding at this time, and in reference particularly to the respective positions of parties appellant? No complaint is made as to the judgment rendered against the appellant's property. The illegality of an assessment, or tax, must be founded upon want of constitutional power to create, and nonfulfillment of the requirements of the provisions of the statute authorizing the levy; and in either contingency, the party seeking to evade payment must plead, and show to the Court in what the illegality of the tax consists.


By the Court, CROCKETT, J.:

The motion to dismiss the appeal in this case must be controlled in its decision by a solution of the following questions:

First—Does the special Act of February 1st, 1870 (Stats. 1869–70, p. 41), by necessary implication, or reasonable intendment, prohibit an appeal in this case?

Second—If not, does section three hundred and fifty-nine of the code authorize an appeal in this class of cases?

If the first question shall be answered in the affirmative, it may be necessary to consider the further question, whether the Constitution has conferred upon this Court appellate jurisdiction in cases of this character, in which event the Legislature would not have the power to take it away, or to prohibit us from exercising it.

In considering the first question it is our duty so to inter-

pret the Act of February 1st, 1870, if practicable, as to up-
hold the right of appeal; for it is not lightly to be assumed
that the Legislature intended to deny a right of appeal in a
case involving so large an amount and affecting the interests
of so many persons. If, therefore, the statute is capable
of being so construed as to maintain the right of appeal
without violating the well established rules for construing
statutes, I should deem it to be my duty to give it that
construction.

On the other hand, if the Legislature has clearly expressed
its intention that there shall be no appeal in this case, the
Courts have no right to defeat this manifest intention by tor-
turing or disregarding the language of the statute. One of
the rules for construing statutes is, that the words are to be
taken in their usual and popular sense, unless they have a
well understood technical meaning; and another rule is, that,
if practicable, effect shall be given to all the words and pro-
visions of the statute.

It is not to be presumed that the Legislature employed
language which was intended to be meaningless, and to per-
form no useful office. Section thirteen of the Act under con-
sideration, after providing for a publication of notice of the
filing of the report of the Commissioners, provides that
within twenty days after the publication of the notice, any
person interested may file in the County Court objections to
the report; and if no such objections are filed within that
period, the report "shall be final and conclusive on all par-
ties interested; and all assessments made and set forth in
said report shall be a lien upon the respective parcels of
land and property in said district upon which said assess-
ments are charged by said report."

If the proceedings had stopped here, and no objections to
the report had been filed within the twenty days, it is clear
that all parties would have been concluded, and the report
could not have been reviewed, either by the County Court

or on appeal.  The meaning of the words "final and conclusive," as here employed, is unmistakable.  But this section further provides that if objections are filed within the twenty days, the County Court shall proceed to hear them, and may either set aside or modify the report, or may recommit it to the Commissioners with instructions, in which latter event a new, or amended report, shall be made; on the coming in of which "the same right of objection by any party interested shall exist, as to said second, or amended report, as hereinbefore provided as to said first report."

But the power of the County Court over the second report is limited to the rendering of "a judgment as to said report, or as to any of the matters therein contained, and such judgment of said County Court, as to the premises, shall be final and conclusive; and upon the final judgment of said County Court, as to the premises, all assessments made and set forth in said report shall, from and after said final judgment, be a lien upon the respective lands and property in the district upon which said assessments are charged by said report."

On the hearing of the objections to the second report the County Court could either confirm it or set it aside entirely, and perhaps might modify it, but had no power to recommit it with instructions for another report.  This is perfectly obvious, from the fact that whilst the power to recommit the first report is expressly given, the statute is not only silent in this respect as to the second report, but limits the power of the Court to the rendering of "a judgment as to said report, or as to any of the matters therein contained."  If the second report had been set aside by the judgment of the Court, the proceedings for the assessment must have been commenced de novo.  Nor could there have been any appeal from the judgment.  The objecting parties could not have appealed from a judgment in their favor, relieving them entirely from the assessment, and the city and county has no interest in the question of the assessments.  The judgment,

in the language of the statute, would have been "final and conclusive." But the Court confirmed the second report, and the appellant, Houghton, one of the objectors, has appealed. It is urged on his behalf, that when the Act of February 1st, 1870, declares that the judgment of the County Court on the second report shall be "final and conclusive," it was not thereby intended that it should be absolutely final and conclusive for all purposes, so as to prohibit an appeal, but only that it should be the final action of the County Court in the matter; that it should conclude and terminate the proceedings before that tribunal so completely that it could take no further step in them, not even for the purpose of hearing and deciding an application for a new trial of the objections to the report. But I think it could not have been the intention of the Legislature to deny to the County Court the power to hear and decide a motion for a new trial. If the objectors had discovered, for the first time, after the trial, that the Commissioners had been bribed, and had made a fraudulent report, or new and material evidence, showing the report to be clearly erroneous, or if the objectors and their counsel had been prevented by inevitable accident from attending the trial and offering evidence in support of the objections, I cannot attribute to the Legislature the intention to prohibit them by statute from setting up these facts on a motion for a new trial. In my opinion, the provision as to the final and conclusive effect of the judgment has no reference whatever to a motion for a new trial, and I have no doubt whatever that it was competent for the County Court to hear and decide a motion of that character, and if the motion was granted to retry the cause. What, then, does the statute mean when it declares that the judgment of the County Court on the second report shall be "*final and conclusive?*" It is apparent that if these words had been wholly omitted the judgment would have been "*final*" in that Court. It would

have ended the proceeding before that tribunal, which had no power to recommit the report with a view to further action in the matter. When it rendered a judgment on the second report its power was exhausted, except to grant a new trial, which the statute was not intended to prohibit. The judgment, therefore, was "*final*" in that Court, even though the Act had not so pronounced it. But the statute provides that it shall not only be final but "*conclusive*." On whom, and for what purposes? In that Court, being a final judgment, it was "conclusive," *proprio vigore*, on the Court and the parties, so long as it remained in force; and it would have been a work of supererogation for the Legislature to declare that a judgment should be final and conclusive in that Court, when it would have been equally so without the declaration. To give to these words so limited an effect would be to impute to the Legislature the folly of incorporating into the statute a meaningless phrase, without force or effect, and accomplishing nothing. This would be to disregard one of the most thoroughly established rules for construing statutes. It is our duty to give effect, if practicable, to every portion of the statute; and we cannot presume that, in declaring the final and conclusive effect of the judgment, the Legislature intended to announce only what would have been equally apparent without that clause. We must seek for some other and more effective meaning in the phrase "final and conclusive," and none other has been suggested or occurs to me than that the judgment shall be final and conclusive for all purposes whatsoever, and shall end the litigation. This, in effect, is to deny an appeal from the judgment, and to make it absolutely conclusive on the parties. It is not our province to discuss the wisdom and policy of such legislation. This belongs solely to the legislative department, whose enactments it is our duty to expound, in accordance with the expressed will of the Legislature. In support of this construction of the statute I refer to the

following adjudged cases, which, though founded on statutes perhaps not strictly analagous to ours, nevertheless strongly support the views here expressed. (*McAllister et al., Commissioners*, v. *Albion Plank Road Company*, 10 N. Y., 6 Seld. 353; *King et al.* v. *Mayor of New York*, 36 N. Y., 9 Tif. 182; *New York Central Railroad Company* v. *Marvin*, 11 N. Y., 1 Kern. 277; *Matter of Extending Canal and Widening Walker Streets*, 12 N. Y., 2 Kern. 406; *Matter of Widening Wall Street*, 17 Barb., 617.)

But it is claimed by the appellant that, if the statute be construed as prohibiting an appeal, it is, *pro tanto*, unconstitutional, inasmuch as the Constitution confers upon this Court appellate jurisdiction in this class of cases. The Constitution, Art. VI, section four, confers upon this Court appellate jurisdiction "in all cases in equity; also, in all cases at law which involve the title or possession of real estate, or the legality of any tax, impost, assessment, toll, or municipal fine." Section six confers upon the District Courts *original* jurisdiction in all these cases, in precisely the same language; and section eight confers upon the County Courts *original* jurisdiction "of all such special cases and proceedings as are not otherwise provided for." The argument is that this is a "case at law," which involves the legality of an assessment, in the true sense of Article VI, section four, of the Constitution, and not a "special proceeding," in the proper sense of section eight. But it is too plain to admit of debate that this is not a "case at law," within the meaning of section four, and that it is a "special proceeding," within section eight, of which the County Court has original jurisdiction. From an early period in the history of the State down to the present time proceedings for the opening, grading, extension, paving, and alteration of streets, and the assessment of damages caused thereby, have been treated by the Legislature and the Courts as "special proceedings," and not as "cases at law." This Court, in numerous de-

cisions, has acquiesced in and directly affirmed this view of these cases; and the doctrine has become too firmly established to be open to discussion at this late day. This, therefore, must be deemed a "special proceeding," of which the County Court could properly take jurisdiction, and not a "case at law," involving the legality of an assessment, of which the Constitution confers upon this Court appellate jurisdiction. But if it were otherwise, and if this were to be deemed a case at law, involving the legality of an assessment, I do not perceive how it would benefit the appellant in respect to the damages which he claims. For, if this be a case of that character, it was not competent for the Legislature to confer jurisdiction of it upon the County Court, inasmuch as the Constitution, in express terms, confers upon the District Courts original jurisdiction in that class of cases; and it is well settled that the jurisdiction in such cases is exclusive, unless there be something in the instrument evincing a contrary intent. If the appellant had succeeded in convincing us that this is a case at law, involving the legality of an assessment, we would have been constrained to hold that the Act conferring jurisdiction on the County Court was unconstitutional and void, and the whole machinery for enforcing the assessment would have fallen with the Act.

If the appellant and other property owners have suffered the grievous damage of which they complain, from reducing the grade of Second street, it has doubtless resulted from faulty legislation; but in the present condition of the case, their only resource would appear to be an appeal to the Legislature for the appropriate relief.

Appeal dismissed.

WALLACE, J., concurring specially:

The judgment of the County Court, which is the subject of this appeal, was rendered upon a Commissioner's report, filed before it, after recommitment of a previous report, under the provisions of an Act of March 30th, 1868, and the Act of February 1st, 1870, amendatory thereof, authorizing the Board of Supervisors of the City and County of San Francisco to modify the grades of certain streets. By the amendatory statute it is enacted, that "the said County Court shall have power to render a judgment as to said report, or as to any of the matter therein contained; *and such judgment of said County Court, as to the premises, shall be final and conclusive*." (Sec. 13.)

The respondent has submitted a motion here, that the appeal taken be dismissed upon the ground that, in the proceeding aforesaid no appeal is allowed by the statute already referred to.

That the amendatory statute of February 1st, 1870, not only does not authorize the appeal in question, but, on the contrary, that its purpose was to absolutely prohibit any appeal whatever in this case, is most evident and unmistakable, upon examination of its provisions. Upon this point I, therefore, concur in the conclusion announced by Mr. Justice CROCKETT, and, in the main, in the reasoning through which he has reached it. I think, too, that the result which follows must necessarily be, that the motion to dismiss the appeal is to be granted.

Independently of rules adopted by this Court on the subject (and there are none), an appeal, as a mere procedure, is defined by statute; it is essentially the creature of the statute, and may be accorded or withheld, restrained, enlarged, or wholly abrogated by legislative enactment. It cannot be affirmed to have any existence, except as found in the expression of the legislative will. The Constitution

has not undertaken to define it, or to secure its benefits, to any person, as against the legislative control.   While that instrument has defined the cases to which the appellate jurisdiction of this Court extends, it has not attempted to provide, in any wise, for the mere instrumentalities through which that jurisdiction is to be exercised.   It has left that subject wholly at large, and to be provided by the Legislature, through statutes enacted, or, in default of them, by this Court, through rules adopted for that purpose.   The jurisdiction of this Court, as defined by the Constitution, it is true, is in no sense dependent upon legislative provisions for its appropriate exercise.   It exists, and is capable of effective assertion, independently of legislative aid as to the procedure through which it is to be exerted.   In general, but not always, the proceedings by which causes reached this Court have pursued the provisions in that respect prescribed by the statutes of the State; for in general, but not always, these provisions have been found to be sufficient for the due exercise of the appellate power of the Court over the subject committed to it by the Constitution.   In the year 1854, however, the Legislature, having failed to provide any means by which judgments rendered upon applications made for writs of habeas corpus might be reviewed here, and the means provided by legislation for the review of certain judgments rendered in the County Courts have failed of their purpose, this Court, nevertheless, exercised its appellate power over such judgments, through the instrumentality of appeals and writs of error prescribed and regulated under its own rules, and by its own authority.   (Vide Rules of Supreme Court of California, adopted October Term, 1854, Vol. 4, Cal. R.)   But whether it be under a statute or under a rule of Court, it is clear that, unless the one or the other has authorized an appeal to be taken in cases of a particular class or character, no appeal, in such cases, can be entertained here, even though such cases be,

in themselves, cases within the appellate jurisdiction of the Court, as defined by the Constitution. Should we even assume, therefore, that the case at bar is included within the expression of section three hundred and fifty-nine of the Practice Act; that it involves the *"legality of an assessment;"* or that it is *"a special case within the appellate jurisdiction* of the Supreme Court;" and so, in the one way or the other, the subject of an appeal to this Court, if respect were had only to section three hundred and fifty-nine itself; yet, as we hold, that that section of the Practice Act has become inoperative as to the judgment of the County Court now in question (because of the provisions of the Acts of 1868 and 1870 *specially* applicable to that judgment, and declaring it conclusive), it follows that the appeal taken can derive no support from section three hundred and fifty-nine; and there is no other *statute* brought to our attention, which is supposed or claimed to give an appeal in the case at bar.

If, then, it be true that an appeal in the case at bar must exist, if at all, by reason of section three hundred and fifty-nine, and if that section has, *as to this case,* been itself repealed, or rendered inoperative by the statutes of 1868 and 1870, it results that the appeal must fall with the statute, upon which alone it rested for support. Irrespective, however, of the question of procedure involved, I come now to inquire whether or not the case under consideration be, in itself, one which is subject to the appellate power of this Court, were an appeal or writ of error provided for that purpose. If we are to look to the Constitution alone as being the source of the appellate jurisdiction of the Court, we find that it extends that jurisdiction to *all* cases *in equity; not* to *all* cases at law, but to *such of them only* as involve the title or possession of real estate, or the legality of a tax, toll, impost, assessment, or municipal fine, or in which the value of the property in controversy exceeds a named sum of money, etc. (Const., Art. VI, Sec. 4.) It will be seen, upon examination of the Constitution,

that the cases to which the appellate power extends are carefully defined, and that (with the exception of cases arising in the Probate Court, and criminal cases amounting to felony), no case is, by its terms, subject to review here in the exercise of our appellate power, unless it be a *case in equity*, or a *case at law* of a *defined character*.

It is argued by the appellant that the case is a "case at law," one involving the legality of an assessment, and therefore, within the jurisdiction of this Court to hear and determine.   But even if it can be said to involve the legality of an assessment, I think it clear that it is not a case at law within the intent of the Constitution.   It is said that it is a legal controversy, prosecuted according to the forms of law, and that, therefore, it is a case at law; but though it be such controversy, and so prosecuted, it does not follow that it is a case at law in the sense of not being *a special case*.   A special case may be said to be a legal controversy, prosecuted according to the forms of law, and yet the Constitution itself has distinctly provided that the jurisdiction in *special* cases shall be in the County Court, unless otherwise provided for.   A special case can no more be said to be a case at law, in a constitutional sense, merely because it is a legal controversy prosecuted according to the forms of law, than it could be said to be a case in equity, because its solution might involve a consideration of the principles of equity, or the judicial proceedings provided for its determination were similar in form to those usually observed in Courts of equity.

But the case at bar *does not* belong to either one of the two grand divisions of civil cases mentioned in the Constitution as subject to be reviewed here, in the exercise of appellate power, but *does* unmistakably belong to another and well defined class of cases which are accustomed to be principally designated and distinguished from the others by the fact that they are "not cases for which the Courts of general jurisdiction had always supplied a remedy." (*Parsons* v. *Tuol-*

*umne County Water Company*, 5 Cal. 43.)  Special cases are
special proceedings characteristically differing from ordi-
nary suits at the common law (*Jackson* v. *Day*, 15 Cal. 91);
special proceedings do not proceed according to the course
of the common law; they give new rights and afford new
remedies (*Saunders* v. *Haynes*, 13 Cal. 145), etc.  This dis-
tinction between "*cases at law*" and "*special cases*" was
already established and enforced by this Court when, in
1862, the Constitution was amended, and "*cases at law*"
and "*special cases*" again provided for; "the County Courts
shall have original jurisdiction  *  *  *  of all such special
cases and proceedings as are not otherwise provided for"
(Art. VI, Sec. 8), is the language of the constitutional amend-
ment of 1862.  I can attribute to this expression no other
meaning than that which, as we have already seen, had been
theretofore fixed to the term "special cases" in this Court
before the amendment of 1862 was adopted; and it results
that "*special cases*," that is, cases which grow out of special
proceedings authorized by statute creating rights not there-
tofore existing, and providing remedies not accustomed to
be administered by Courts of law or equity as such, are not
cases at law within the appellate jurisdiction of this Court,
as defined by the Constitution, even though they may involve
questions or values which, *if involved in a case at law*, would
constitute it one to be reviewed here on appeal or writ of
error.

The case at bar not being a case in equity nor a case at
law, within the constitutional designation, is not within the
appellate jurisdiction of this Court as defined by the Consti-
tution.  Had the Acts of 1868 and 1870, out of which this
controversy has arisen, provided that an appeal from the
judgment in question might be taken to this Court, a ques-
tion would then have arisen as to whether or not it is com-
petent for the Legislature to add to the class of cases over
which the Constitution has declared that our appellate power

is to be exercised, another and distinct class not enumerated as such in the Constitution, but omitted, it may be, *ex industria*, therefrom.   But as the case here does not present that question, I am not to be understood as expressing any opinion upon that point.

I am of opinion that the appeal must be dismissed.

TEMPLE, J., concurring specially:

I am inclined to agree with Mr. Justice CROCKETT in his construction of the statute under which the proceedings were had in this case.   The proceeding is merely to levy an assessment to provide certain revenues for the Government. In such matters it is not usual to permit an appeal to the Courts while the proceedings are *in fieri*.   The right to supervise the officers whose duty it is to make the assessment would, more naturally, perhaps, have fallen to the Board of Supervisors, as in the case of other assessments. It is, however, a proceeding of the same nature as though it had been had in the Board of Supervisors.   It is a proceeding in the exercise of the sovereign power of taxation. As I have said, these matters are usually conducted outside of the Courts, and the regularity of the acts of the officers is usually tested in collecting or resisting the collection of taxes.   The mere fact that the County Court was allowed to act as a supervising Board does not, therefore, in my opinion, raise the presumption that it was intended that there should be an appeal.   It is final and conclusive as an assessment, and is the end of that proceeding.   It then becomes an assessment, and the lien immediately attaches to the land.

I agree with the Chief Justice that this is not a " case at law," and, therefore, it is not a case of which the Constitution has vested this Court with appellate jurisdiction in terms.

In *Knowles* v. *Yeates*, 31 Cal. 82, this Court held that the Constitution gives the Court appellate jurisdiction in special cases. They rely, to some extent, upon *Conant* v. *Conant*, 10 Cal. 252. I have never been satisfied with the reasoning in *Knowles* v. *Yeates*, and although the Court have often entertained jurisdiction in similar cases, where the question has not been raised, I do not understand that it has been expressly affirmed, except in *Day* v. *Jones*, 31 Cal. 261, decided at the same term.

The case of *Conant* v. *Conant* was an action of divorce, in which no rights of property were involved. It was contended that the Supreme Court had no jurisdiction, because it did not fall within any of the classes mentioned in section four, Article VI, of the Constitution, as it then stood. It conferred upon the Supreme Court appellate jurisdiction "in all cases where the matter in dispute exceeds two hundred dollars," and where the legality of any tax, toll, etc., was in question. The Court say, in effect, that this was not intended to define, and, therefore, to restrict the jurisdiction of the Court, but merely to limit that jurisdiction in cases capable of pecuniary computation. No such construction can possibly be given to the language of the Constitution as amended. That section now reads as follows: "The Supreme Court shall have appellate jurisdiction in all cases in equity; also, in all cases at law which involve the title or possession of real estate, or the legality of any tax, impost, assessment, toll, or municipal fine, or in which the demand, exclusive of interest, or the value of the property in controversy, amounts to three hundred dollars; also, in all cases arising in the Probate Courts; and also, in all criminal cases amounting to felony, on questions of law alone. The Court shall also have power to issue writs of mandamus, certiorari, prohibition, and habeas corpus, and also all writs necessary or proper to the complete exercise of its appellate jurisdiction. Each of the Justices shall have power to issue

writs of habeas corpus to any part of the State, upon petition on behalf of any person held in actual custody, and may make such writs returnable before himself, or the Supreme Court, or before any District Court, or any County Court, in the State, or before any Judge of said Courts."

The qualifying clause cannot possibly apply to "cases in equity," nor to cases arising in Probate Courts. If the doctrine of *Knowles* v. *Yeates* be correct, these provisions in the Constitution are perfectly meaningless. Cases in equity were certainly not mentioned for the purpose of limiting the jurisdiction of this Court to such cases as involved an amount greater than three hundred dollars. The rules by which this section of the Constitution must be construed are familiar and obvious. In the absence of circumstances which indicate a different rule of construction, the enumeration of the cases to which the appellate jurisdiction of the Court extends excludes others. In *Knowles* v. *Yeates* the Court did not by "rational conjecture" or otherwise, in my opinion, supply the presumed intention of the framers of that instrument, but they have stricken out words which have an obvious meaning, and which, in an important matter, affect the character of the instrument.

The very able Judge who wrote the opinion in *Knowles* v. *Yeates* evidently felt that the case of *Conant* v. *Conant* was not altogether in point, for he has fortified his position by a lengthy and eloquent argument, but from the reasoning of which I differ *toto cœlo*. A provision of the Constitution, which I think clear beyond the possibility of doubt, is set aside, partly because it was thought that a free people, in forming a Government for their protection and to secure to themselves the blessings of liberty, must have intended to provide an appeal in cases of grave concern to the Court of highest authority. An appeal to this Court, of course, affords

a great degree of protection to the citizen, but certainly the framers of the Constitution have shown that they did not consider such right essential to secure the liberties or property of citizens. There is no appeal in criminal cases not amounting to felony, and yet the citizen may be fined to the extent of thousands of dollars, and kept for years in jail under a conviction for a misdemeanor.

If it be admitted that the Constitution fails to express the full meaning of the people in adopting it, and we are left to "rational conjecture" to supply what has been omitted, it does not seem to me reasonable to suppose that it was intended that an appeal to this Court should be allowed in all special proceedings. In a matter like the present proceeding the whole history of the Government is opposed to the idea that an appeal is allowed. It is a mere executive proceeding to levy a tax. In such proceedings the exigencies of the Government do not permit the delays which would be inevitable if the case could drag its slow length through the Courts. It is a mere administrative proceeding, in which the action of the officers may be reviewed on certiorari, if they exceed their powers. This has been the universal practice in the exercise of the sovereign power of taxation. The powers of the officers must be strictly pursued, or the assessment cannot be collected, and the regularity of these proceedings may ordinarily be questioned collaterally. Now, as the practice of the Government has been that these matters should not be subject to judicial revision, while *in fieri*, there is a strong presumption that no appeal was intended to be allowed, nor is the presumption changed because, on this occasion, the County Court is made to perform the office of a Board of Equalization. If the action of the officers, whose duty it is to make the assessment to raise the taxes by which the Government is supported, could be revised by the Courts in the first instance, as to the correctness of the manner in which valuations were made, and many other things usually

trusted entirely to their discretion, and the case be subject
to the law's delay on appeal from the lowest to the highest
Court, the Government would share the fate of many other
suitors, and perish, while its case is kept in Court poised on
nice points and legal subtleties.


RHODES, C. J., dissenting:

The question presented is, whether an appeal lies to this
Court from the judgment of the County Court confirming
the report of the Commissioners.   The appellate jurisdic-
tion of the Court extends to all " cases " in equity, also to
all " cases " at law which involve the title or possession of
real estate, or the legality of any tax, etc.   The former Con-
stitution conferred upon the Supreme Court appellate juris-
diction in all " cases " where the matter in dispute exceeded
two hundred dollars, and when the legality of any tax, etc.,
was in question.   By that Constitution (Art. VI, Sec. 9)
original civil jurisdiction was granted to the County Court
in such " special cases " as the Legislature might prescribe.
The present Constitution (Art. VI, Sec. 8) grants to the
County Court original jurisdiction of all such " special cases
and proceedings " as are not otherwise provided for; but
neither the former nor the present Constitution expressly
grants to the Supreme Court jurisdiction of " special cases."
Are " special cases " included within the meaning of
" cases," as that term is employed in defining the jurisdic-
tion of this Court?   I am of the opinion that they are not.
If they are, jurisdiction of no special case could be enter-
tained by the County Courts, because as soon as a special
case is created by statute, jurisdiction would at once vest
in the District Courts, by force of the term " cases," which
is employed in the section defining the jurisdiction of the
District Courts.   " Special cases " would thus be provided
for by the Constitution, and none would be left for the

County Courts. "Special cases," it is held in *Parsons* v. *Tuolumne*, 5 Cal. 43, "must be confined to such new cases as are the creation of statutes, and the proceedings under which, are unknown to the general framework of Courts of law and equity," and that the term "special cases" was not meant to include any class of cases for which the Courts of general jurisdiction had always supplied a remedy. (*Dorsey* v. *Barry*, 24 Cal. 449; *Saunders* v. *Haynes*, 13 Cal. 145.)

The Supreme Court, from an early day, has entertained jurisdiction of special cases. In some of them, the statute under which the proceedings were had provided for an appeal, and in others no mention of an appeal was made. In *Koppikus* v. *State Capitol Commissioners*, 16 Cal. 248; *Gilmer* v. *Lime Point*, 18 Cal. 229; s. c., 19 Cal. 47; *Contra Costa Railroad Company* v. *Moss*, 32 Cal. 323; *Sacramento P. and N. R. R. Co.* v. *Harlan*, 24 Cal. 334; *Stanford* v. *Worn*, 27 Cal. 171; *S. F. and S. J. R. R. Co.* v. *Mahoney*, 29 Cal. 112; *S. F., A., and S. R. R. Co.* v. *Caldwell*, 31 Cal. 36; *C. P. R. R. Co.* v. *Pearson*, 35 Cal. 24—the statutes under which the proceedings in those cases were had not allowing an appeal; and in *S. V. R. R. Co.* v. *Moffatt*, 6 Cal. 74; *Hyneman* v. *Blake*, 19 Cal. 580; *Spring Valley Water Works*, 17 Cal. 132; s. c., 22 Cal. 434; *The Kearny Street Cases*, 32 Cal., and many other cases of a similar character, the statute granted an appeal. In *Knowles* v. *Yeates*, 31 Cal. 82, which was a contested election case, and which arose under the present Constitution, the jurisdiction of the Court was challenged, but it was held that the Court had jurisdiction—that jurisdiction was conferred by the Constitution, though words of express grant were not formed in that instrument. Much reliance was placed on *Conant* v. *Conant*, 10 Cal. 252, which was an action for a divorce. The reasoning in the latter case sustained the appellate jurisdiction, which had been entertained from the organization of the Court, in suits for divorce, suits to prevent threatened injuries, suits to deter-

mine the right to honorary offices, and writs of *quo warranto*, and other actions in which the matter in dispute was not susceptible of a pecuniary measurement, or in which the legality of a tax, toll, impost, or municipal fine was not in question; although such cases did not fall within the classification of actions mentioned in the section conferring appellate jurisdiction, but came within the *general grant* of appellate jurisdiction. The classification of the subject matter of jurisdiction is more complete in the present than in the former Constitution; but it admits of serious doubt whether the words, literally interpreted, will comprehend all cases of the character of those above mentioned, without resorting to a more liberal interpretation of the general words granting appellate jurisdiction—the interpretation adopted in *Conant* v. *Conant* and *Knowles* v. *Yeates.*

The position cannot be maintained that the Court has or has not jurisdiction of special cases accordingly as the Legislature in providing for them has or has not allowed an appeal. The jurisdiction of the Court is derived from the Constitution alone, and the Legislature can neither enlarge nor restrict it. When a special case is devised, the question whether this Court has appellate jurisdiction in the matter must be determined by an interpretation of the provisions of the Constitution. In view of the numerous instances in which the Court, under both the former and the present Constitution, has entertained jurisdiction of special cases, and of the interpretation of the Constitution adopted in *Conant* v. *Conant* and in *Knowles* v. *Yeates*, and the reasoning upon which that interpretation is based, I am of the opinion that the Supreme Court has appellate jurisdiction in "special cases."

It therefore becomes unnecessary, in this case, to determine the meaning and effect of the words "final and conclusive," as applied by the thirteenth section of the Act to the judgment of the County Court. If the purpose was to

cut off all appeals to this Court, it failed of accomplishment for the want of competent power in the Legislature.

The motion to dismiss the appeal should, in my opinion, be denied.


SPRAGUE, J., dissenting:

The proceedings authorized by the statute of March 30th, 1868, entitled "An Act to authorize the Board of Supervisors of the City and County of San Francisco to modify the grades of certain streets," and the Act of February 1st, 1870, amendatory and supplemental thereto, are special proceedings, dependent for validity entirely upon these statutes in every step of their progress.

The powers and duties of the Board of Supervisors, the Commissioners appointed by such Board, and the Superintendent of Public Streets and Highways, as also the jurisdiction and powers of the County Court in the premises, are confined to and controlled by these special statutes.

This appeal is from the judgment of the County Court affirming the report of the Commissioners appointed by the Board of Supervisors to assess the benefits and damages to each separate lot of land within the limits of the district as defined by the statute, and the only questions as yet presented arise upon a preliminary motion to dismiss the appeal.

Without entering into a discussion of the provisions of the statute, which would be out of place in the decision of this preliminary motion, I deem it sufficient to state that some of the objections filed by the appellant to the second report of the Commissioners did present to the County Court questions involving the validity of the assessment of benefit to his property, as made by such Commissioners. By section eleven of the Act as amended, it is made the duty of the Commissioners to "first ascertain and determine the amount of damages resulting to any property injured or affected by

said work over and above all benefits, and  *  *  *  then proceed to assess the whole amount thereof, together with the amount due for all of said work, and also the costs and expenses of all proceedings had under this Act and the Act of which this is amendatory, including the fees of said Commissioners and of the counsel and clerk employed by said Commissioners, upon the lands and premises benefited by said change of grade, and which lie within the district aforesaid, as near as may be in proportion to the benefit which shall have accrued to such lot."

From the above extract, it will be observed that the Commissioners are first required to "ascertain and determine the amount of damages resulting to any property injured or affected by said work over and above all benefits." This involves an assessment of benefits and damages to each separate lot or parcel of land affected by the modification of grade contemplated by the statute, and to the aggregate excess of damages over benefits, thus ascertained, is to be added the cost and expense of all proceedings had under the Act, including the fees of the Commissioners and of the counsel and clerk employed by the Commissioners, and the aggregate of these several items is the amount which the Commissioners are required to assess upon the lands and premises benefited by said change of grade within the district, as near as may be, in proportion to the benefit which shall have accrued to each lot. Any error, therefore, or departure from the requirements of the statute in determining the aggregate amount to be assessed upon the property benefited, must, of necessity, involve the validity of the assessment upon any specific lot as its proportionate share of the aggregate amount to be assessed. Indeed, every act and duty required of the Commissioners, up to and including their final report, is a step involving the validity of their final assessment of benefits to each separate lot, and any lot owner whose interest is affected by any intermediate or final

step of the Commissioners, may challenge the legality of their assessment upon the ground of error or non-compliance with the statute in any step of their proceedings, and such challenge would necessarily involve the legality of the final assessment upon each lot as its proportionate share of expenses.

The Legislature, then, having conferred upon the County Court jurisdiction of these special statutory proceedings, and devolved upon it a supervisory control of the acts of the Commissioners in making and returning an assessment, the legality of which is challenged in that Court; and the Constitution of this State having in express terms conferred upon this Court appellate jurisdiction in all cases involving the "legality of any tax, impost, assessment, or municipal fine," it would seem that section three hundred and fifty-nine of the Practice Act fully authorized this appeal.

It is, however, claimed that the special statute under which these proceedings were had do not provide for an appeal—on the contrary, in effect, prohibit an appeal from the final judgment of the County Court in the premises. But if the Constitution of the State expressly confers appellate jurisdiction upon this Court of the subject matter involved in the judgment of the County Court, no Act of the Legislature can oust such jurisdiction; and it would require the most direct and unmistakable language in an Act of the Legislature to justify this Court in attributing to that department an intent to divest this Court of jurisdiction in any case or proceeding within its constitutional grant of jurisdiction. The language relied upon as in effect prohibitory of an appeal in the present case, is found in the thirteenth section of the amendatory Act, and, with its context, is as follows: "Within twenty days after the publication of said last mentioned notice, any interested party or parties dissatisfied with the report of said Commissioners, or any part thereof, may file with the Clerk of the County Court of said city and county written objec-

tions to said report, or any part thereof, setting forth his or their grounds of objections. If no such objections are so filed within said period of twenty days, the report of said Commissioners shall be final and conclusive on all parties interested; and all assessments made and set forth in said report shall be a lien upon the respective parcels of land and property in said district upon which said assessments are charged by said report. But in case any such objections are so filed within said period of twenty days, the County Court of said City and County of San Francisco shall assign a day for the hearing and trial of said objections, and on the day assigned, or on such other day or days to which the same shall be adjourned, said Court shall hear the allegations of the party or parties so objecting, and shall take proof in support of and against said objections, and of said report and the assessments therein, and shall confirm the said report, or may modify the same, or may set the same aside, either in whole or in part, or, in its discretion, may refer the matter back to the same Commissioners with instructions, who shall thereupon proceed as hereinbefore provided, or according to said instructions. Upon the hearing of said objections before said County Court, it shall be competent for any party to introduce evidence, either in support of said objections or the report of said Commissioners; and in case said report should be referred back to said Commissioners by said County Court, then, upon a second report being made by said Commissioners, the same right of objection, by any party interested, shall exist as to said second or amended report as is hereinbefore provided as to said first report; and upon the coming in of said second or amended report (in case there should be any second or amended report), the said County Court shall have power to render a judgment as to said report, or as to any of the matter therein contained, and such judgment of said

County Court as to the premises shall be final and conclusive. And upon the final judgment of said County Court as to the premises, all assessments made and set forth in said report shall, from and after such final judgment, be a lien upon the respective lands and property in the district upon which said assessments are charged by said report."

It will be observed, by a careful reading of this section, that even after the report of the Commissioners of assessment has first been filed with the Clerk of the County Court, the jurisdiction of the County Court is not invoked and does not attach until, under the notice published by the Clerk of the Court, some party interested in the proceedings has filed with the Clerk of the Court objections to the report of the Commissioners, or some part thereof. Until this is done there is no case in Court, and no occasion for the action of the Court; but when objections to the report are properly filed, there is a case or matter in Court of which the statute requires it to take jurisdiction, the parties to which are substantially the municipal corporation of the City and County of San Francisco, affirmatively proceeding under the statute on the one side, and the persons filing objections to the report of the Commissioners on the other. The issues are made by the report and objections thereto, and the Court is required to proceed to hear the allegations of the parties objecting to the report, and take evidence in support of and against such objections, and of said report and the assessment thereon, and shall confirm said report, or may modify the same, or may set the same aside, either in whole or in part, or, in its discretion, may refer the matter back to the same Commissioners, with instructions, etc.; and, in case such report should be referred back, then, upon a second report being made, the same right of objection by any party interested shall exist as to said second or amended report as to the first report; and, upon the hearing of objections to the second or amended report of the Com-

missioners, the County Court is empowered to render a judgment as to said report, or as to any matter therein contained; and such judgment of the County Court as to the premises shall be final and conclusive. This judgment of the County Court upon the second or amended report of the Commissioners is the final and conclusive act of that Court in the premises, and terminates its power and jurisdiction therein. It has no power to .further review the action of the Commissioners, to re-refer any matter to them, or hear further objections, nor in any manner, on motion for new trial or otherwise, to review its own action in the premises.

This, in my judgment, is the extent of the restriction imposed, and the language of the statute should not be construed as prohibiting a review of the final judgment of the County Court in the premises by a Court upon which the Constitution has conferred appellate jurisdiction of the specific matter involved therein, or as repealing by implication a general law authorizing appeals from such judgments.

The motion to dismiss, I think, should be denied.